# Application of Federal Advisory Committee Act to Editorial Board of Department of Justice Journal

An outside advisory or editorial board for a new Department of Justice publication would be subject to the Federal Advisory Committee Act if it deliberated as a body in order to formulate recommendations, but would not be subject to FACA if each individual member reviewed submissions to the journal and gave his or her own opinion about publication.

March 27, 1990

MEMORANDUM FOR THE EXECUTIVE ASSISTANT
TO THE ATTORNEY GENERAL

You have asked whether an outside advisory or editorial board for a new publication of the Department would be subject to the Federal Advisory Committee Act ("FACA"), 5 U.S.C. app. §§ 1-15. We believe that the board would be subject to FACA if it deliberated as a body in order to formulate recommendations, but would not be subject to FACA if each individual member reviewed submissions to the journal and gave his own opinion about publication.[1]

## I.

The definition of "advisory committee" under FACA covers, among other things, "any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof . . . which is . . . established or utilized by one or more agencies, in the interest of obtaining advice or recommendations for . . . one or more agencies or officers of the Federal Government." 5 U.S.C. app. § 3(2). An advisory board—a committee that collectively reviews drafts of articles, makes recommendations about publication, and suggests editorial policy—would

---

[1] We assume that the editorial or advisory board would not perform operational functions with respect to the publication. If the board actually made the final decisions about what to publish or how to run the journal, additional legal questions would be raised. *See, e.g.,* 41 C.F.R. § 101-6.1004(g); 5 U.S.C. app. § 9(b); *Public Citizen v. Commission on the Bicentennial of the U.S. Constitution,* 622 F. Supp. 753 (D.D.C. 1985).

probably come within FACA. It would be "established" by the Department, "in the interest of obtaining advice or recommendations" for the Department. 5 U.S.C. app. § 3(2). As the legislative history of FACA shows, the term "established" is to be interpreted in its "most liberal sense, so that when an officer brings together a group by formal or informal means, by contract or other arrangement, and whether or not Federal money is expended, to obtain advice and information, such group is covered by the provisions" of the Act. S. Rep. No. 1098, 92d Cong., 2d Sess. 8 (1972). In view of this broad meaning, the advisory or editorial board would come within FACA if it deliberated as a body.[2]

Furthermore, FACA would apply even though the advisory board, as we understand, could include some members who are full-time government officers or employees.. Under the statute, the definition of "advisory committee" excludes "any committee which is composed wholly of full-time officers or employees of the Federal Government." 5 U.S.C. app. § 3(2)(iii). By implication, a committee that is not "wholly" composed of government employees or officers comes within the statute. *See Center for Auto Safety v. Tiemann*, 414 F. Supp. 215, 225 n.10 (D.D.C. 1976) (committee of state and federal employees is covered by FACA), *remanded on other grounds sub nom. Center for Auto Safety v. Cox*, 580 F.2d 689 (D.C. Cir. 1978); S. Rep. No. 1098 at 8 (FACA motivated by abuses involving committees "whose membership in whole or in part" comes from outside the government).

Although some courts have put limiting constructions on the meaning of "advisory committee," we do not believe that such a limiting construction could be justified here, if the editorial or advisory board deliberated as a body in order to make its recommendations. The definition of "advisory committee." if read as broadly as the language permits, is expansive. *See, e.g., Nader v. Baroody*, 396 F. Supp. 1231, 1232 (D.D.C. 1975), *vacated as moot*, No. 75-1969 (D.C. Cir. Jan. 10, 1977). The language could extend to instances where application of FACA—with its requirements of balanced membership, open meetings, and public availability of documents—would unconstitutionally intrude on the exercise of the President's authority. Courts have construed the statute to avoid such outcomes. *See Public Citizen v. United States Dep't of Justice*, 491 U.S. 440 (1989) (FACA does not apply to American Bar Association's committee on judicial selection); *Nader v. Baroody*, 396 F. Supp. at 1234-35 (FACA does not apply to casual, day-to-day meetings by which the President gathers information and views); *see*

---

[2] On occasion, in determining whether a group is an "advisory committee," OLC has relied upon limiting draft guidelines for FACA that were published in the Federal Register, 28 Fed. Reg. 2306 (1973), but not adopted, 39 Fed. Reg. 12,389 (1974). These guidelines, OLC has stated, are an early administrative interpretation of FACA and thus entitled to some weight. *See* Memorandum for Irving P. Margulies, Deputy General Counsel, Department of Commerce, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: President's Private Sector Survey on Cost Control* at 6-7 (Dec. 15, 1982). Even under these guidelines, a group that has "all or most" of five "characteristics" would probably apply to the proposed board (fixed membership, establishment by federal official, defined purpose of providing advice on particular subjects, and regular or periodic meetings), and the last characteristic might also apply (an organizational structure, such as a group of officers, and a staff).

54

*also National Anti-Hunger Coalition v. Executive Comm. of the President's Private Sector Survey on Cost Control*, 557 F. Supp. 524, 530 (D.D.C.) (FACA, if read broadly, could violate separation of powers), *aff'd and remanded*, 711 F.2d 1071 (D.C. Cir.), *amended*, 566 F. Supp. 1515 (D.D.C. 1983). However, no constitutional issues would be raised by applying FACA to the contemplated editorial or advisory board. The business of such a board would not touch on any "constitutionally specified task committed to the Executive," *Public Citizen v. United States Dep't of Justice*, 491 U.S. at 460, nor would regulating the board's activities under FACA interfere with the President's discharge of his duties.

## II.

We believe that the Act would not reach an advisory board if the Department sought only the views of individuals rather than the views of the board as a whole. FACA applies by its terms to "advisory committees." "Advisory committee" is a term that connotes a body that deliberates together to provide advice. Therefore, as a matter of statutory construction, we believe that FACA does not apply to a group which simply acts as a forum to collect individual views rather than to bring a collective judgment to bear.

GSA regulations confirm the commonsense notion of what differentiates a "committee" from a collection of individuals.[3] The regulations state that FACA does not cover:

> Any meeting initiated by a Federal official(s) with more than one individual for the purpose of obtaining the advice of individual attendees and not for the purpose of utilizing the group to obtain consensus advice or recommendations. However, agencies should be aware that such a group would be covered by the Act when an agency accepts the group's deliberations as a source of consensus advice or recommendations . . . .

41 C.F.R. § 101-6.1004(i). Although this provision is not entirely clear, it appears to mean that FACA does not cover a collection of individuals who do not perform a collegial and deliberative function and whose views are considered individually rather than as part of a "sense of the committee."

---

[3] In *Public Citizen v. United States Dep't of Justice*, the Court held that the GSA regulations were entitled to "diminished deference" because they were not issued until ten years after FACA was passed and because FACA, while empowering GSA to issue "administrative guidelines and management controls," 5 U.S.C. app. § 7(c), did not expressly authorize GSA to fill in the definitions of the statutory terms. 491 U.S. at 463 n.12. *But see* 491 U.S. at 477-81 (Kennedy, J., concurring in the judgment). Nevertheless, the Court did not view the regulations as wholly without weight.

The clearest example of such a collection of individuals would be a group of experts, each of whom reviews submissions in his own area of expertise. Nevertheless, even if each member of the editorial board reviews every article and sends his comments to the Department, the arrangement would still appear to fall outside FACA, because a collective judgment would not be sought. Indeed, since the regulation permits a meeting at which individual views are offered, it would, a fortiori, permit the solicitation of individual views of board members who are not at a meeting. The board members would merely be acting in the same way as individual contractors who offer consulting services to the government. *Cf.* H.R. Rep. No. 1017, 92d Cong., 2d Sess. 4 (1972) ("The term advisory committee does not include any contractor or consultant hired by an officer or agency of the government, since such contractor would not be a 'committee, board, commission, council . . ., or similar group . . . .'") (alteration in original). We caution, however, that this regulation has not been directly tested in the courts.

While the regulation also permits a group to meet without having to comply with FACA, as long as only individual views are offered, such an arrangement would be open to legal challenge. As a practical matter, the dynamics of such a gathering are likely to lead to members exchanging, analyzing, and debating the views presented, and it would be difficult to argue, in that event, that the members were offering only discrete, individual opinions.

If the editorial or advisory board is set up as a vehicle for the presentation of individual views, it may be prudent to leave the board without any formal structure, such as officers or staff. One opinion in a case under FACA could be read to suggest that such "indicia of formality" may be relevant to whether the principle recognized in the GSA regulation would apply. *See Natural Resources Defense Council, Inc. v. Herrington*, 637 F. Supp. 116, 120 (D.D.C. 1986).

WILLIAM P. BARR
*Assistant Attorney General*
*Office of Legal Counsel*

56